Burket, C. J.
After the cause had been heard in the probate court upon the report of the master com *41 missioner appointed by that court, and the exceptions thereto, and after a judgment had been rendered finding the amount in the hands of Mr. James as administrator, the administrator de bonis non took and perfected an appeal to the court of common pleas, and in that court Mr. James and his sureties insisted that the court should hear the cause upon the report of the .master so appointed by the probate court; but the common pleas refused to do so, and sitting on appeal as a court of probate, appointed a special commissioner and referred the cause to him under Section 6186, Revised Statutes. That section reads as follows:
“The court may, if it shall’ deem it expedient and proper, refer the account and the exceptions thereto, if any, to a special commissioner, appointed by the court for that purpose.”
To this action of the common pleas Mr. James and his sureties excepted, and assign the same for error here, claiming that the appeal did not vacate the report of the master, and that the common pleas had no jurisdiction to appoint a master.
This claim is not tenable. By Section 6407, Revised Statutes, it is provided that on appeal from the probate court to the common pleas, the cause shall be tried, heard and decided in the same manner as though the common pleas had original jurisdiction thereof.
This being so, it is clear that if the common pleas had original jurisdiction, as it once had, of the settlement of accounts of administrators, it could appoint a special commissioner under said section 6186, and refer the cause to him for hearing and report. If section 6407 does not have reference to original jurisdiction in probate matters, but means that the cause on appeal shall be tried, heard and decided in the same *42 manner as causes in which the common pleas now has original jurisdiction, then it follows that the common pleas might refer the cause to a special master under Section 5222, Revised Statutes; so that under either construction the common pleas had the power to appoint a special master and refer the cause to him for hearing and report.
When what is now section 6186 was first enacted in 1840, it contained-the provision that the reference should be “according to the usages of courts of chancery;” and so long as this provision remained in the section, the course of proceeding upon such a reference was according to the rules in equity practice relating to masters. Some of those rules were very cumbersome and the proceedings technical, as for instance, no exception to a master’s report could be taken unless a formal objection had previously been filed at the proper time, and certain reports of a-master did not need confirmation, while as to others, confirmation was required.
When the statutes were revised in 1880, the words, “according to the usages of courts of chancery,” were stricken out of the section, and the words “appointed by the court for that purpose,” were inserted. At the same time the statute of March 30, 1868, 65 O. L., 40, which first provided for referring causes to a special master, was also revised and carried into the Revised Statutes as sections 5221, 5222, et seq., and thereby the chancery practice was codified and condensed into a few sentences, and became part of the civil code, and proceedings before a master, instead of being according to the usages of chancery, are now according to the code of civil procedure, and when a reference is made by the probate court, or by the court of common pleas on appeal, under said section 6186, the proceeding is *43 as is provided in said section 5222, that is, “to take the testimony in writing, and report the same to the court and therewith his conclusions on the law and facts involved in the issues, which report may be excepted to by the parties, and confirmed, modified, or set aside by the court.” In a reference of the accounts of an administrator and exceptions thereto, the account and exceptions constitute the issues, and the administrator and the exceptors are the parties.
As the administration statute gives no power to a probate court to refer an account to a referee, and as Section 5215, Revised Statutes, prohibits a reference by the probate court, unless ty consent of parties, the effort of the probate court to clothe its special master commissioner “with all the powers of a referee” was void, and did not, in legal effect, confer any powers as referee upon him. He was simply a special master commissioner, and governed by the laws applicable to such. As such master, his report was carried by the appeal to the court of common pleas, and that court might, in its discretion, hear the cause upon such report, and such other testimony as might he offered, or if it deemed “it expedient and proper,” it might refer the account and exceptions to a special commissioner appointed by that court for that purpose. It would not be error to pursue either course.
It is also urged by Mr. James and his sureties that the master appointed by the common pleas did' not make and file his report within ninety days after the ■cause was finally submitted to him, and that at the expiration of ninety days he lost jurisdiction, and that his report made after that time was null and void.
For this claim reliance is had upon the statute 90 O. L., 192, Bates 557-1 and 557-2. This statute reads as follows:
*44 1. “Any cause now pending, or that may hereafter be begun in any court of record in this state, when sub- . niitted on motion or demurrer, shall be determined and adjudicated thereon by such court within thirty days after such submission. And any such cause, when submitted to the court on proceedings in error, or on final trial on the issues joined, shall be determined and adjudicated within ninety days after such submission.”
2. “This act shall apply to all causes sent to a referee or special master, and to all motions affecting the confirmation, modification, or vacation of any report of such reference or master.”
This statute is directory merely, and does not have the effect to deprive the court, referee, or special master of jurisdiction. The object of the statute is to secure speedy action by the court, referees and masters; but to take away jurisdiction would have the opposite effect, and cause intolerable delay. A judge takes an oath, faithfully and impartially to discharge and perform all the duties incumbent on him as such judge. A referee is sworn well and faithfully to hear and examine the cause and to make a just and true report thereon. A special master commissioner is sworn faithfully to discharge his duties. These oaths all have reference, among other things, to said statute, and thereby all judges, referees and masters táke an oath to obey that statute, and to make their decisions within the time required. The oath and statute are binding on their conscience, but are not matters affecting their jurisdiction. The decisions as to justices of the peace under Section 6579, Revised Statutes, are not applicable to courts, referees, or masters.
All the accounts were referred to the master by the court of common pleas to hear and determine as to all *45 the exceptions, whether to the last or former accounts, without first having a determination by the court that there were errors or mistakes in the former accounts; and this is assigned for cause to set aside the report of the master. We think there is no error in this. The court could determine this question much better after the master had passed upon it than without his assistance.
It is also urged that the master did not respond in his report to all the issues, and it is claimed that the whole report should be set aside for that reason. This is not tenable. Under the old chancery practice a review might be had for such a cause, and if necessary further testimony taken, but under said section 5222, the court may modify the report, and for that purpose hear testimony itself, or if thought best the cause may be recommitted to the master, as upon review, and thereby the deficiency may be corrected or supplied. But such deficiency in the report can be no good cause for setting the report aside, and going over the whole case anew.
This disposes of the questions of practice and we will now consider the case upon its merits.
While under the rule of decision of this court in Bigelow v. Bigelow, 4 Ohio, 138; Hall v. Pratt, 5 Ohio, 72; and Tracy v. Card, 2 Ohio St., 431, debts owing by an administrator to the estate are to be regarded and treated as assets in his hands, the rule is so far unsatisfactory that it should not be extended, but should be confined to cases in which the administrator owes the debt individually and unconditionally. The statute, section 6069, when fairly construed, does not go further. See also Shields v. Odell, 27 Ohio St., 398, and Rossman v. McFarland, 9 Ohio St., 369.
The circuit court was therefore right in deducting *46 the debts owed by the firms with which Mr. James was. connected, and its judgment in that behalf is affirmed.
A note of over $600, signed by Mr. James and one' S. P. Hanks, was charged against the administrator as-assets in his hands, and to which objection was made-by him and his sureties. The evidence showed, and the master found, that this note was the individual debt of Mr. James, and that Mr. Hanks was surety thereon for him. That being so it was his individual debt, for which he was unconditionally liable, and the same was properly charged against him.
The receiver of the two firms of which George Stuts. and Mr. James were members, sold the property of the two firms by order of the court, and the same was bought in by Mr. James and his late partner, Mr. Neer, and they gave their notes secured by mortgage on the property. Afterward Mr. Neer sold out to Mr. James, ■ and the latter assumed the payment of the notes and mortgage, so that the matter then stood the same as if Mr. James had purchased the property himself and given his own notes and mortgage therefor. Part of the property thus mortgaged was burned and the insurance money, over $3,000, which should have been paid to the mortgagee,, the receiver, to discharge the mortgage, was paid to Mr. James, so that in legal effect he received this money from the receiver, not. for himself individually as he claims, but for himself as administrator, because the receiver owed him nothing individually,, but did owe him this money as administrator, provided that all the debts of the two firms, were paid, as they were, and the court had ordered him to pay the insurance money over to the administrator of George Stuts, deceased. But while all the-debts had been paid by the receiver, it is conceded that *47 the court made no order for the payment of this insurance money to the administrator, James, and therefore it is claimed that he could not, and did not, in legal effect, receive this money as such administrator. But it must be remembered that as this insurance money was the fruits of the burned mortgaged property, it should have gone to the receiver to discharge the mortgage held by him, and the debts being paid the receiver could be compelled, by order of court, to pay it over to James as administrator, and James, as such administrator, could be compelled to receive and charge himself therewith. What the parties, or either of them, might be compelled to do, they may do without such compulsion. Acting upon this principle, Mr. James as administrator, on December 31, 1886, gave a receipt to the receiver for $7,107.48, which included this insurance money, and the court charged him therewith in said case No. 2016, upon the final hearing nearly two years after his removal, but the money was received in 1886 while he was yet administrator, and this judgment in No. 2016 was only compelling him, after his removal, to do what he should have done before his removal, and what he did without compulsion by the giving of said receipt. The receiver accepted said receipt, and released the mortgages of record. .
James individually, and as administrator, was a party to case No. 2016, and the court having adjudged m that case, that he was chargeable with the amount of that receipt, the matter was thereby finally adjudicated against him, and he cannot be heard to litigate the question over again.
Each commissioner to whom the case was referred held the administrator chargeable, but in part upon *48 reasons different from the above. In view of the whole case we are clear that he is properly chargeable with the amount of said receipt, as money which came into his hands as administrator, although it was received by him before the giving of said receipt, but was by the act of both parties turned into estate money in the hands of the administrator.
The balance of the amount of the receipt over and above the insurance money, was the proceeds of the sale of the mortgaged property, and clearly should have been applied to discharge the mortgage.
There are various charges of interest on money charged against the administrator as assets in his hands, amounting to $3,537.45. These items of interest should not be charged against him, for the reason that assets in the hands of an administrator, which have not been ordered by the court to be paid out or distributed, or which are tied up by litigation in good faith, or upon which no profit has been received, do not bear interest. Sections 6179 and 6180, Revised Statutes; Cooch v. Irwin, 7 Ohio St., 22, 29, 30.
None of the items upon which interest is charged against the administrator come within the above rule, and therefore it was error to charge said interest, and the same will be deducted.
Upon the advice of counsel and the probate judge, the administrator distributed among the heirs of George Stuts, deceased, the sum of $2,471.09, and received credit therefor in his first account. After the case had been referred to a commissioner by the probate court, certain persons claiming to be creditors, filed exceptions to this item of distribution, by leave of the court, and the exceptions were considered by both commissioners and sustained, and the administrator received no credit for this item of distribution in the report of the master. .
*49 It is urged in his behalf, that as the distribution was made upon advice of counsel and the probate judge, that the administrator should not suffer, and that he should receive credit therefor. This is not tenable. The statute requires that all debts shall be first paid, and distribution made of the remainder. The advice ■of counsel and of the probate judge cannot change the statute. Distribution under such circumstances is made by the administrator at his peril. If the estate proves to be solvent he should be duly credited, but if insolvent, he should receive no credit. As between ■creditors and the administrator, the creditors have the better right.
There is no finding as to whether the estate of ■George Stuts, deceased, is solvent or insolvent, nor whether said sum of $2,471.09 or any part thereof, will be required to pay the debts and costs of the estate.
By'virtue of Section 5205, Revised Statutes, a court may enter judgment without finding the facts upon which the judgment is based, except generally, and such is also the rule in equity practice; but when a ■court makes a special finding of facts, as required by Sections 5205 and 6710, Revised Statutes/ or when a cause is referred to a referee or special master, the statute requiring that he report bis conclusions on the law and facts, only such .judgment in such cases can be rendered as is warranted by the facts found; and facts not found are presumed not to exist. Leach v. Church, 10 Ohio St., 148; Jones v. Brown, 11 Ohio St., 601; Springer v. Avondale, 35 Ohio St., 620; McHenry v. Carson, 41 Ohio St., 212; Albright v. Hawk, 52 Ohio St., 362.
•As the master in this case does not find as a fact "that the Stuts estate is insolvent, there is no warrant for disallowing said item of distribution. Upon the *50 hearing in the common pleas that court might have taken testimony as to the solvency of the estate, and modified the report accordingly, and it is not too late to do that yet. The judgment disallowing that item will be reversed, and the cause, as to that item, remanded to the court of common pleas to take testimony as to the solvency or insolvency of the estate of George Stuts, deceased, and render judgment accordingly.
After deducting said items of interest so improperly-charged, $3,537.45, and also said item of distribution, $2,471.09 so remanded to the court of common pleas, from said sum of $8,136.81 so adjudged in the hands of said administrator by the circuit court, we find in his hands, to be paid over to the present administrator cZe bonis non, the sum of $2,128.27, and to the extent of that sum, the judgment is affirmed, and as to said sum of $3,537.45, interest so improperly charged, the judgment is reversed, and judgment rendered in favor of said plaintiff in error.
It is conceded that said Joseph W. James is insolvent, and his sureties being in this case by cross-petition, claim that the sureties of an insolvent administrator can not be held for assets in his hands consisting of what he owed the estate at the time of his appointment.
As this court in McGaughey v. Jacoby, 54 Ohio St., 487, held that the sureties of' an insolvent executor were liable for such assets, it must follow that the sureties of an insolvent administrator are also liable,, because upon that question there is no difference in principle between the two, and no distinction can be made.

Judgment modified.

Spear, Davis, Shauck, Price and Crew, JJ.,, concur.